IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAREEM HASSAN MILHOUSE,** : | **CIVIL NO. 1:CV-10-01974** |
| Petitioner : | (Judge Rambo) |
| v. : | |
| **B.A. BLEDSOE,** : | |
| Respondent : | |

## **M E M O R A N D U M**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Kareem Hassan Milhouse ("Milhouse"), an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg").  Milhouse alleges that his constitutional rights were violated in the context of a disciplinary proceeding.  For the reasons that follow, the petition will be denied.

**I.   Facts**

On May 14, 2009, at approximately 11:38 a.m., while performing his duties as the Special Management Unit ("SMU") Lieutenant, Lieutenant A. Jordan went to Milhouse's cell and ordered him to submit to hand restraints in order to move him to another cell.  (Doc. 7-2 at 9.)  Milhouse refused to comply with the order.  (*Id.*)  As a result, a use of force team was assembled to effectuate the cell move.  (*Id.*)  The use of force team entered the cell and Milhouse threatened staff by stating, "if you put me on

the compound, I will kill staff," and "somebody will die tomorrow." (*Id.*) Milhouse was placed in ambulatory restraints by the use of force team and removed from the cell. (*Id.*)

As a result of this incident, Milhouse was issued an incident report charging him with Refusing a Program Assignment, Refusing an Order, and Threatening Staff, in violation of Sections 306, 307, and 203 of the Bureau of Prisons' ("BOP") disciplinary code, respectively. (*Id.*) The incident report was delivered to Milhouse at 12:00 p.m. on May 15, 2009. (*Id.*)

An investigation was conducted on May 18, 2009, commencing at 12:00 p.m. (*Id.* at 10.) The investigating officer, Lieutenant Sassaman, noted that the incident report was not investigated within 24 hours of Milhouse's removal from restraints due to a lack of qualified staff working over the weekend. (*Id.*) On May 20, 2009, the Unit Disciplinary Committee ("UDC") held a hearing to review the incident report. (*Id.* at 9.) At the hearing, Milhouse stated that he did not receive the incident report within 24 hours, and the UDC properly documented Milhouse's complaint. (*Id.*) After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id.*) Milhouse was advised of the DHO hearing and advised of his rights at that hearing. (*Id.* 11-14.) He was given copies of "Duties of Staff Representative," "Notice of Discipline Hearing Before the DHO," and "Inmate Rights at Discipline Hearing." (*Id.*) Milhouse requested Lieutenant Fosnot act as his

staff representative, and listed two staff members he wished to have the DHO call as witnesses in order to provide testimony that during the incident "he didn't threaten anybody." (*Id*. at 12, 15.) The DHO secretary, M. Inch, subsequently documented that the two witnesses were contacted and reported that during the incident neither one was in a position to hear what was being said by Milhouse. (*Id*. at 15.)

The DHO scheduled a hearing for June 23, 2009. (*See id*. at 4.) On that date, the DHO decided to continue the hearing until July 7, 2009, to allow time for both the DHO and Milhouse's staff representative to review the video footage of the incident that Milhouse had requested. (*Id*. at 4-6.)

The DHO hearing resumed on July 7, 2009. (*Id*. at 4-8.) Milhouse acknowledged that he understood his rights before the DHO and was ready to proceed with the hearing. (*Id*. at 6.) He presented no documentary evidence for the DHO to consider. (*Id*.) Milhouse testified that he did refuse staff orders to submit to hand restraints, but that he did not make any threatening statements towards staff during the incident. (*Id*.) The DHO relied on Milhouse's testimony, as well as memoranda from several staff members regarding the incident and the video footage, to support his finding that Milhouse had committed the Code 307 violation, Refusing an Order. (*Id*. at 7.) Milhouse was sanctioned with disallowance of 14 days of good conduct time, 15 days of disciplinary segregation, loss of 120 days commissary privileges, and loss of 120 days of visiting privileges. (*Id*. at 8.)

3

## II. Discussion

The BOP disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration of more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because Milhouse was charged with Threatening Staff, an offense in the high severity category, the matter was referred for a disciplinary hearing.

High and moderate category offenses carry a possible sanction of, *inter alia*, a loss of good conduct time credits. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four

(24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

### A.     Sufficiency of the Evidence

Milhouse contests the sufficiency of the evidence relied upon in finding him guilty of the Code 307 violation. (Doc. 1 at 5.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id.*

In the instant case, Milhouse alleges that the DHO did not consider all the evidence, namely that he was not on a hunger strike at the time of the incident and therefore BOP staff should not have removed him from his cell. (Doc. 1 at 5.)

5

Milhouse, however, did not raise this issue at the time of the DHO hearing.[1] Therefore, because the DHO had no opportunity to consider such an issue, Milhouse cannot now claim that the DHO did not consider all of the evidence. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (due process does not require "the consideration of evidence that could have been but was not presented at the hearing"). Moreover, the court recognizes that even if the DHO did consider whether Milhouse was on a hunger strike, the incident report and investigation, the memoranda from several staff members present at the cell extraction, the memorandum of the DHO secretary documenting Milhouse's requested witness statements, the video footage of the incident, and the medical records of Milhouse and his cellmate provided the DHO with confirmation that Milhouse committed the violation found, Refusing an Order. (*See* Doc. 7-2 at 6-7.) In light of that evidence, the court finds that there was "some evidence" to support the DHO's decision. The documentary evidence and video footage that provided an account of Milhouse's refusal of an order confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Milhouse's claim that there was insufficient evidence to support the DHO's decision.

---

[1] In his traverse, Milhouse claims that he did in fact inform the DHO at the time of his hearing that he was not on a hunger strike at the time of the incident, and cites to his March 2010 appeal from the July 2009 DHO decision in support thereof. (*See* Doc. 8 at 3, 8.) However, there is nothing in that appeal to the Central Office to confirm that Milhouse presented such evidence at the DHO hearing. Thus, his argument is without merit.

### B.     Notice of Charges and Investigation

Milhouse also contends that he did not receive adequate notice of the incident report from the investigating officer, in violation of BOP policy. (Doc. 1 at 4.) Under 28 C.F.R. § 541.15(a), "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." *Id*. Further, "[t]he Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the [DHO] . . . ." 28 C.F.R. § 541.17(a). The record in this case reflects that Milhouse received notice of the charges against him at 12:00 p.m. on May 15, 2009, one day after the incident and well in advance of the DHO hearing. (Doc. 7-2 at 9.) Further, the DHO addressed Milhouse's procedural challenge in which he sought "expungement" of the incident report as follows:

> Milhouse . . . requested that his staff representative review video footage of Z-Block recorded by the Video Camera Surveillance System to prove that the investigating officer never delivered him a copy of the incident report as documented in Sections 14, 15, and 16 of the incident report. Milhouse presented no documents for the DHO to consider. Inmate Milhouse alleged a procedural violation of his due process rights occurred during the processing of this incident report. Inmate Milhouse testified that he never received a copy of the incident report within 24 hours of the report being written, as is ordinarily required by Bureau of Prisons policy regarding inmate discipline. The DHO noted that Sections 14, 15, and 16 of the incident report document that Milhouse received a copy of the incident report from the investigating officer on 5-15-2009 at 12:00 p.m. Inmate Milhouse was further advised that the investigating

officer documented in Section 24 and 25 of the incident report that inmate Milhouse appeared before the investigating officer, acknowledged his right to remain silent at all stages of the disciplinary process, and was provided a copy of the incident report. Sections 24 and 25 of the incident report further document that inmate Milhouse displayed a fair attitude during his interview by the investigating officer, chose to make no comment with regard to the incident report, and informed the investigating officer that he was requesting no witnesses. Milhouse stated that he never appeared before the investigating officer and that the investigating officer fabricated sections 15, 16, 24, and 25 of the incident report. The DHO advised Milhouse, again, that the record in this case documented that the incident report was processed in accordance with policy. Milhouse reiterated that the investigating officer lied and he never received a copy of the incident report.

The DHO asked inmate Milhouse whether he received a copy of the incident report following his hearing before the UDC. Inmate Milhouse testified that he did receive a copy of the incident report a day or two after the UDC hearing. The DHO informed Milhouse that Milhouse had received a written copy of the charges against him, by his own admission, from the UDC. This written copy of the charges was received by Milhouse well in advance of 24 hours prior to appearing before the DHO. The DHO asked Milhouse whether he was prepared to defend himself against the charge, however, [Milhouse] again raised the allegation that he did not receive a copy of the incident report within 24 hours of the report being completed by the investigating officer. Milhouse asked that the incident report be expunged based on this alleged procedural error. The DHO informed Milhouse that the record reflects that he did receive a copy of the incident report from the investigating officer, and was in fact interviewed by the investigating officer. Moreover, the DHO noted Milhouse stated that he did receive a copy of the incident report from the UDC well in advance of 24 hours prior to appearing before the DHO, and was prepared to defend himself against the charge. The DHO informed Milhouse, therefore, that the incident report would not be expunged, and the hearing would proceed as scheduled. Finally, the DHO informed Milhouse that the DHO would not consider reviewing video footage of Z-

> Block to prove or disprove that Milhouse was delivered a copy of the incident report as documented in Sections 14, 15, and 16 of the incident report, based on the explanation presented in the preceding paragraphs.

(*Id*. at 5.) In light of this detailed explanation by the DHO, and the fact that Milhouse presented no documents in support of his allegation, the court finds that Milhouse did in fact receive the incident report within 24 hours of the incident and well in advance of the DHO hearing. Therefore, his due process rights were not violated with regard to notice. *See Wolff*, 418 U.S. at 564-66.

Further, to the extent that Milhouse challenges the investigation of the charges, it is noted that following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.14(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

The record reflects that a BOP official, Lieutenant Sassaman, conducted an investigation on May 18, 2009, the Monday after the incident occurred.[2] (Doc. 7-2 at

---

[2] The court takes judicial notice of the fact that May 15, 2009 was a Friday, and May 18, 2009 was a Monday.

9

10.)  In his incident report, the investigator noted that the "report was not investigated within 24 hours of the inmate's removal from restraints [on May 15, 2009] due to a lack of . . . qualified staff working over the weekend."  (*Id*.)  Lieutenant Sassaman reviewed the incident report, read Milhouse his rights and gave him a copy of the incident report, read the incident report to him, and noted that Milhouse displayed a fair attitude and was cooperative with staff.  (*Id*.)  Milhouse stated that he understood his rights and did not request any witnesses at that time.  (*Id*.)

Since the record shows that an investigation was conducted by a BOP official in a prompt manner given the staff restraints over the weekend, and Milhouse was timely delivered the incident report, Milhouse has clearly failed to establish that he was prejudiced by a violation of BOP regulations such as failure to conduct an investigation.  Thus, the petition will be denied with respect to Milhouse's claim that BOP officials failed to conduct a full and prompt investigation and failed to inform him of such.

## C.  Sanctions

To the extent that Milhouse challenges the severity of the sanctions imposed by the DHO, the court finds his claim to be without merit.  (Doc. 1 at 5.)  The sanctions that may be imposed upon a finding of guilt of a moderate category offense include, *inter alia*, forfeiting earned statutory good time, up to 15 days of disciplinary segregation, and loss of privileges.  28 C.F.R. § 541.13.  Milhouse is not entitled to

relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, Milhouse's argument is without merit.

## III.   Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

>    s/Sylvia H. Rambo
>    SYLVIA H. RAMBO
>    United States District Judge

Dated:  April 8, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,** : **CIVIL NO. 1:CV-10-01974**
:
**Petitioner** : **(Judge Rambo)**
:
**v.** :
:
**B.A. BLEDSOE,** :
:
**Respondent** :

## **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                               s/Sylvia H. Rambo
                               SYLVIA H. RAMBO
                               United States District Judge

Dated:  April 8, 2011.